May it please the court. So how many Fifth Circuit cases, arguments for you, Mr. O'Neill? Your Honor, I've been really waiting for you to ask me that question. So I'm ready to tell you this is 14, with 13 being on Monday. Very good. All right. Glad to have you back. Thank you. I'd like to briefly discuss Tennessee aggravated assault before proceeding to the realistic probability inquiry. Of course, the government, in order to show that this is a crime of violence, had to show that it either has force as an element or falls within the generic definition of aggravated assault. Both of those require a physical injury. And I don't understand the government's response brief to contest that. Force requires a physical injury, as this court held in Reyes-Contreras. And the generic definition of aggravated assault, when it relies solely on injury, requires that that injury be physical as serious bodily injury and bodily injury defined in the model penal code to require a physical injury. Tennessee aggravated assault can be committed without causing a physical injury. Therefore, it neither has force as an element nor does it fall within the generic definition of aggravated assault. I knew you were going to get to this, but let's cut to the chase so that we don't run out of time. I think everybody agrees you need cases that actually apply that to a purely mental harm, to a non-physical injury. So what cases have you cited that apply the Tennessee aggravated assault crime to a purely mental, non-physical injury? Judge Duncan, I have not located a case or cited a case that applies the Tennessee aggravated assault statute. So why don't you lose them? I mean, we're on plain error review. Just don't. I mean, why isn't the case over? So what I have cited are Tennessee cases that show that, in fact, the Tennessee courts do apply the statute in the special, non-generic manner for which I argue. You mean the child rape cases that you cite? Correct. So that's like McClellan and Price? Correct. Okay. So I've read those cases. I mean, so just for example, to quote McClellan on page 6, the Supreme Court of Tennessee has noted that, quote, every rape or sexual battery offense is physically and mentally injurious to the victim. So I guess I'm having trouble connecting up those rape cases to a purely mental harm, since rape obviously involves both physical and mental harm. So how do those cases help you? Judge Duncan, I think my best case is State v. Price. And the part that I would turn to there is where they actually do the sufficiency analysis on the mitigating factor, which the question is whether the defendant caused a serious bodily injury. And there in Price, the Tennessee appellate court writes, clearly the fact that the victim was sexually penetrated at an age 12 necessarily includes a threat of mental impairment. Well, I'm sure it includes it, but it also includes raping a child. So I take it that's why the case also says we are compelled to note that every rape is physically and mentally injurious to the victim. So, I mean, surely there's definitely mental harm involved in raping a child. We agree on that. But there's also physical harm. So, again, how does that case help you prove that more than a theoretical possibility of applying a different statute is purely mental harm? Go ahead. Well, I think both of those cases, as well as the additional line in Price that the court looks to, whether the fact that the victim underwent extended counseling and has difficulty coping with normal activities, shows that the Tennessee courts are construing the serious bodily injury definition to include mental harm. Well, to include it, yeah, but you have to show that the aggravated assault crime is going to be applied to purely mental harm. Even assuming we can read the definition of serious bodily harm under Tennessee law to include purely mental harm, which, quite frankly, I would need to be some kind of philosopher to figure that out. I mean, bodily harm includes purely mental harm? What is that? I'm not even sure how you do that. So I can give you some examples of how you do that outside of Tennessee cases. Well, how about with an aggravated assault? How do you aggravate or assault somebody and only cause mental harm? So if you look at the Sixth Circuit's decision in Burris, the en banc decision that Sanchez-Perez, which concluded that there was a realistic probability of Tennessee applying its statute. Sanchez-Perez. Yes, sir. So Sanchez-Perez relies on Burris. Burris cites three, I think, good examples of the problem that the court is wrestling with. It cites a case called Elliott out of Ohio that has a similar statute to Tennessee's, where a man allowed his son to discover his mother, who he had recently murdered. So that was a pure—and he was convicted of aggravated assault for allowing the son to experience that mental trauma. So that's Ohio applying an aggravated assault statute to a purely mental harm. The Sixth Circuit also cited— So I killed my wife and I allowed my son to discover the body? Yes. You've committed murder. That's very clear. Your wife is the victim, and you committed aggravated assault, causing your son that sort of PTSD, that psychiatric harm. That's what Burris—that's what the court says. That's an Ohio case, right? Yes, sir. And there's other, but they also suffer from that harm. But Cooper involved assisting in the sexual assault of a child where there was no indication that force was used. It was like a mother who was helping someone sexually assault her children. Okay, we're back to child rape cases. I agree. I know you've got to work with what you have. And Hodges was a priest who molested a parishioner without any force but caused psychiatric trauma and was prosecuted for aggravated assault in the case of that psychiatric trauma. But I really want to—I get that—I understand your point. So I want to step back a little bit. I wasn't being subtle. I'm skeptical about it being anything more than a purely theoretical possibility. Well, so I appreciate you saying that because that's really the crux of this, right? The reason why we require state law in Castillo-Rivera, in Buenos Aires, is to show that this isn't me saying, like, I could do this if I were a prosecutor, but no one else ever has, right? And that's why citing to state cases that don't apply the specific crime but do cite the specific statute. And I would urge you that those Tennessee cases that I cite cite specifically to 3913-106 where Tennessee defines bodily injury and serious bodily injury. Tennessee has many aggravated assault cases that cite to the exact same statute. And that statute says this statute applies to all offenses within Title 39, which aggravated assault is one of them. So when I cite to cases that interpret that provision of the statute, I've met my requirement to show this is not something I'm imagining. On plain error review? Yes, sir. Really? Because that's just— Just clearly, clearly wrong? Yes, sir. Okay. Because it's the—and there's two reasons, right? So, like, I would think what I just said is clearly established law from Duenas-Alvarez and Castillo-Rivera as well as this court's previous cases relying on the plain language of statutes. And then the second step is the fact that it relies on the plain language of the statute. And when I can show that mental harms are included in the plain language of Tennessee statute, I meet the requirement on plain error review. Now, I'm very aware that, you know, there are unpublished cases that cut against me a bit. I know you're on the panel in Portery, and I'm aware of Forbidio. But I want to kind of stress that those cases are importantly different here, right? Because those are both looking at what the federal understanding of recklessness and intentional are against Louisiana's, you know, different way of doing it and relying on extensive— I think the quote in Portery is, you know, we're relying on extensive Tennessee—sorry, Louisiana case law. It says—it's referencing what happened in Forbidio. It says, we conclude that at best the extension of Garner's reasoning to Louisiana's domestic aggravated assault statute is a close call and that it was—the reasoning there hinged on the Louisiana statutes. And it was very specific to the Louisiana statutes that were being interpreted. But that's not the case here. Here, if you look up Tennessee aggravated assault, you see that it can be committed by causing bodily injury resulting in serious bodily injury. And if you look up what Tennessee describes aggravated assault as, you say—you look and you see it includes causing impairment or substantial—prolonged or substantial impairment to the functioning of a mental faculty. So when it's on the plain language of the statute, that's when the district court commits plain error. And I think we have multiple cases from this court that have held that. Rodriguez-Flores comes to mind. Well, it sounds like you're saying that if I can work out through the definition that there's the possibility of this statute being applied to purely mental harm, which is not what the definition says, but we'll go with that, then you don't have to show any cases. Is that what you're saying? No cases? So that's what—that's the approach that Rodriguez-Flores seems to take. I realize that that seems to be a bit in tension with Castillo-Rivera. So I don't think I have to say, no, I don't have to show any cases. But I do think it's sufficient for me to say, based on Duenas-Alvarez, that I can show that the state court—I do show cases where the state court has applied that definition in the manner that I'm urging. Yeah, but I still haven't heard a Tennessee case that does it. I've heard child rape cases that involve physical and mental harm. So then we get to the question of what the court means by the statute. And so when the statute for aggravated assault says you can commit it by causing bodily injury, the statutory definition of bodily injury is included in the statute. We don't look at individual subsections. We don't look at— Well, it includes impairment. I don't understand it, frankly. Bodily injury includes impairment to a mental faculty. Yes, sir. Does that mean it's no longer bodily and it's now mental? I'm sorry? It's no longer bodily? How can the definition of bodily harm include purely mental harm? Tennessee, as well as Ohio and Montana and I think some other states, start at bodily harm and then draw a distinction between physical and mental harm. And they include in bodily harm the understanding of causing mental harm. That's what Sanchez Perez in the Sixth Circuit, Burris in the Sixth Circuit, Castro in the Ninth Circuit all talk about, is that there are—Texas doesn't do it. I don't know the approach Louisiana takes. In Texas, when we talk about bodily injury, we mean a physical injury. In the model penal code, when it says bodily injury, it means a physical injury. So I totally understand grappling with that, and it seemed strange to me as well, because bodily would seem to exclude the impairment of a mental faculty. But clearly, some states understand it differently. Well, no, I can impair a mental faculty by inflicting bodily harm on someone. I agree. Well, yes. You can impair—of course. The question is, can you cause bodily harm by only inflicting mental harm?  And like the statute in Rodriguez-Flores, which lists different means of committing sexual assault, here, when Tennessee defines bodily injury and lists different ways of causing a bodily injury, those ways are— I mean, the statute says you can commit it by doing this, this, or this, and one of those ways is causing impairment to a mental faculty. It doesn't at any point say it's one of a collection of factors or that it's a weighing sort of analysis. I agree with that. I would just—I don't think it's clear what it means, and so I would want to look to the case law to see how that cashes out in actual situations. Right. And my— No, I know. And your side in the case is that they're there. Yes, and my strongest argument to you, and, you know, it's—frankly, like the best case that we have is State v. Price in Tennessee where they say in determining whether a serious bodily injury was committed, they said as one of the reasons that they can conclude that it does, the record of the victim underwent extended counseling and has difficulty coping with normal action. Do you think that means that child rape under Tennessee law is not a crime of violence? No, because it's not an element—it's not an—their serious bodily injury is not an element of the child rape law. It's a mitigating or enhancing factor. Wow. Okay. I don't get—I don't understand that, but— So I was really confused by it, too. Yeah. The short answer is Tennessee has a version of what we use the guidelines for, and they require sentencing courts to accurately determine whether there are certain enhancing factors or certain mitigating factors that apply. And in the Tennessee child rape law, one of the mitigating factors is whether you caused or threatened serious bodily injury. And so here the state—the appellate court is determining whether the district court correctly concluded that that mitigating factor didn't apply, and it's saying that they were correct that the mitigating factor didn't apply because the evidence showed that because the victim underwent extended counseling and has difficulty coping with normal action— And physical harm. —serious bodily injury resulted. I get it. And physical harm. There's independent reasons that they rely on, but when they interpret what mental faculty means, they say that the evidence of counseling and difficulty dealing with normal, everyday activities is sufficient evidence. Okay. So I agree that there's alternate holdings, but I think— That's a good argument. Thank you. Yes, ma'am. I know you're a court appointed here, but do you know why Russell didn't object to the enhancement? No, Your Honor. I could only speculate, but I have no knowledge. I would tell you that if you—Westlaw, this statute, Sanchez-Perez v. Garland, pops up. The Sixth Circuit has found that there's a realistic probability of Tennessee applying that case, which falls within its circuit in that way. And so that's why I made the argument before you today. Okay. Thank you. Thank you. Thank you, Mr. O'Neill. You saved time for a battle. For the United States, I'm going to ask you to pronounce your name because I'll probably mess it up. Yes, Your Honor. Stephanie Kenyart for the United States. This case comes to this court on plain error review, and that is a very high hill to climb. And I'd like to respond to several arguments that we've heard. First, why the sexual assault cases do not show that the Tennessee courts would apply aggravated assault to purely mental injuries. Second, why Sanchez-Perez—I would like to point out that it explicitly said it was not overturning its aggravated assault cases, holding that under Tennessee law. Aggravated assault is a crime of violence. Oh, because that case is about a misdemeanor? Yes, about misdemeanor domestic violence. And the Ohio statute that it looked at is, in fact, strikingly different from the Tennessee statute. And then I'd like to look at the plain text of the Tennessee statute. So first, what cases have been cited from Tennessee aggravated assault? We all agree that there are absolutely none. These sexual assault cases are not good for showing a realistic probability of what Tennessee would do in the aggravated assault context. So the realistic probability requirement means that this court is not to go and hypothesize or speculate about what a state court would do when faced with a particular crime. That is why we require a showing that a statute here, Tennessee aggravated assault, has been applied in the exact manner for which the defendant argues. Now, here are these sexual assault cases. The court would have to go ahead and say Tennessee would interpret the definition in section 106 of bodily injury in the exact way that it has in the specific sexual assault cases. Despite the fact that the definitional section begins with, we use these definitions unless context indicates otherwise. We would have to assume it would grab that definition. We would have to assume that in the aggravated assault context, a very different context, Tennessee courts would read the language in the exact same way and that they would actually convict an individual. None of those steps are permissible under the realistic probability test. Judge Duncan, as you pointed out, in each of these sexual assault cases, pure mental injuries were not at issue. These involve cases with the actual rape of a child between the ages of 5 and 12. They all involve physical harm. As for the Price case, finally, even if the defendant could get past all of this and say on plain error review and realistic probability, you can grab factually distinguishable cases applying an entirely different statute, a mitigating factor in rape cases, to aggravated assault, this court would still have to satisfy itself that those sexual assault cases represent state case law as a whole. And they do not. So in Price, as in all of these cases, the discussion of bodily injury begins with a quote from State v. Kissinger from the Tennessee Supreme Court, in which the Tennessee court said every rape or sexual battery offense is physically and mentally injurious to the victim. When the Tennessee Supreme Court wrote that, it was talking about a particular sentencing enhancement for cases where there are grave personal injuries. Personal injuries, it said, encompasses mental and physical harm. On the next page, it looks at an enhancement for great potential for bodily injury. The defendant argued that there was an argument over whether the enhancement applied due to psychological harm. And in footnote 9, the Tennessee Supreme Court wrote, the potential for serious psychological injury was certainly present in this aggravated assault rape case. However, this factor is limited to bodily injury. So we are on plain error. The realistic probability test requires a Tennessee aggravated assault case where somebody was convicted for pure mental harms. What we have here are sexual assault cases that did not involve pure mental harms, that are a handful of intermediate court decisions that appear to have ignored the one thing the Tennessee Supreme Court has actually said about what bodily injury means in that context. Is the premise of your argument that it's not enough for us to read the definition of bodily harm under Tennessee law and see if we can theoretically work out a case where there could be aggravated assault that involves purely mental harm? Is that just not enough? That is not enough. And I think that that is what this circuit's law requires. And frankly, it is the way this case should be resolved. It is straightforward. It is demanded by this court and Castillo-Rivera. Now, you know, Mr. Russell has posited whether or not there is an exception if you have strong plain language. We dispute their plain text interpretation. But even before you get to that, this court hasn't created such an exception. Castillo-Rivera is crystal clear. In Castillo-Rivera, the dispute was over whether Texas felon in possession laws are broader than federal felon in possession laws. And the majority found on its face, yes, Texas felon in possession laws apply to a broader category of felons. Nonetheless, the defendant did not prevail because, this court wrote, the defendant must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special non-generic manner for which he argues. This court has never deviated from that. The two post-Castillo cases that Mr. Russell points to are Rodriguez-Flores and Urbina-Fuentes. And in both of those cases, the question that was asked about the meaning of the statute had been answered by state courts. So neither of them create an exception to Castillo, nor could they. Castillo is an en banc decision, and these were panel decisions. But next, I'd like to address Sanchez-Perez. Sanchez-Perez is a decision from the Sixth Circuit on which the defendant relies heavily to say bodily injury must encompass purely mental harms, because that is what the Sixth Circuit told us in this case. Now, the Sixth Circuit was again analyzing a different statute. It was analyzing bodily injury as it appears in a misdemeanor domestic violence statute, not serious bodily injury as it appears in the aggravated assault statute. In footnote 8 of that opinion, the Sixth Circuit acknowledged that it had previous cases in which it had concluded Tennessee aggravated assault is a crime of violence. And it stated that it did not find those conclusions to be inconsistent with its analysis in Sanchez-Perez. Thus, Sanchez-Perez itself acknowledges Tennessee aggravated assault is materially different from Tennessee misdemeanor domestic violence, and the Sixth Circuit itself would not revisit its prior holdings that aggravated assault is a crime of violence. And in fact, you know, several circuits, this circuit, the Fourth Circuit, and the Ninth Circuit, have all specifically considered whether serious bodily injury in the Tennessee aggravated assault statute turns it into a crime of violence. And every single circuit has said, yes, it does. Mr. Russell, in his brief, posits that those cases are irrelevant because, for example, in Munguia-Portillo, the defendants had committed aggravated assault with a deadly weapon. And so Mr. Russell would cabin those cases to deadly weapon cases and not serious bodily injury cases. But that is a misreading of Munguia-Portillo because in Munguia-Portillo, the court did not conduct a divisibility analysis. So it had to determine that every aggravating factor qualified as a crime of violence. And so it did independently analyze serious bodily injury and find that under Tennessee law, that turned the aggravated assault statute into a crime of violence. The Fourth Circuit did the exact same thing in United States v. Ogle. And the Ninth Circuit did the same in Perez v. Silva. There is no binding precedent in this court that Tennessee aggravated assault is not a crime of violence. There is binding precedent that it is a crime of violence because of the serious bodily injury aggravating factor. And under Coles, as this court explained just last year, the lack of binding authority in favor of the defendant's reading of the statute is generally dispositive in the plain error case. Now, I think that all of this, the lack of binding precedent to show a clear and obvious error, the lack of a Tennessee court to show a realistic probability that Tennessee would apply aggravated assault to a defendant who only caused mental harms, that easily resolves the case. One or both of those grounds are sufficient. But I would like to address the plain text argument that has been raised repeatedly by Mr. Russell. So I'd like to start with the Ninth Circuit's decision in United States v. Castro. In United States v. Castro, that case actually involved a Montana statute. It was, again, a family member violence statute. But the Ninth Circuit had previously held that Tennessee aggravated assault is a crime of violence. And it looked at whether it's holding that Montana family violence wasn't a crime of violence created some kind of conflict. And in footnote four, it determined it did not because it wrote, it is unclear that Tennessee's definition of bodily injury, like Montana's, include emotional and psychological harm. Tennessee bodily injury may be limited to physical brain damage rather than mental or emotional distress. And so here, there clearly is at a minimum a reasonable dispute over what mental faculty means. But we know the circuits that have looked at this question, the Ninth Circuit and the Sixth Circuit, have both determined that serious bodily injury in Tennessee is not encompassing purely mental harms. So then the question, you know, I think the final argument that Mr. Russell makes on this point is, this court should reach a different conclusion. It can't, not on plain error review. And the authority given for why Tennessee should be construed as permitting an aggravated assault conviction based on purely mental harms is an argument that the Tennessee statute is just like the Ohio statute. That is an argument that the Sixth Circuit accepted, but it is one that should the court get this far in its analysis, it must reject, especially on plain error review. So Judge Duncan, you pointed out that when we look at a serious bodily injury, the assumption, the expectation, the common meaning is that it is going to be a physical injury. It's the elephant in the room. For English speakers. Excuse me? For English speakers, yes. Yes, yes.  You know, to include purely mental harms under bodily or physical injury is, I'll call it the elephant in the room. And it doesn't say that. It says impairment of the mental faculty. Exactly. And I don't know what that means, exactly. So we do have context clues, because Tennessee does not define mental faculty. But here's what it does. It puts it at the tail end of a definition that is purely physical. So in its entirety, Section 106 definition of bodily injury says bodily injury includes a cut, abrasion, bruise, burn, disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty. So mental faculty is included in a list of physical injuries, which is likely what drove the Ninth Circuit to conclude in Castro that we are talking about physical brain damage. And the Sentencing Commission's comments reinforce that bodily injury is physical. And the comment to the statute, the Sentencing Commission wrote bodily injury broadly defined includes abrasions and cuts, physical pain, illness, and impairment. And elsewhere in Title 39 of the Tennessee Code, which is criminal offenses, whenever the legislature intended to talk about purely mental harms, it used three phrases. None of them are mental faculty. It uses mental pain and suffering, mental or emotional disturbance, and mental disease or defect. If Tennessee meant to append an undefined mental faculty term at the end of a list of physical injuries and suddenly blow serious bodily injury wide open to include mental harms, purely mental harms, then it hid that elephant in a mouse hole. And Ohio did something very different. The Ohio statute that the Sixth Circuit considered in United States v. Burroughs and that it found really does mean that something like PTSD, a purely mental injury that was not caused by a physical attack, can constitute an aggravated assault. Ohio was crystal clear about it. Its term is serious physical harm. And it begins its statutory definition like this. Serious physical harm to persons means, A, any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment. It does not use an undefined mental faculty term. And importantly, it doesn't lump that definition about mental injuries with any physical injuries. Those are separately listed in different subparts of the statute. And so the Ohio statute, which the Sixth Circuit admittedly describes as nearly identical in Sanchez-Perez to the Tennessee statutes, they are structured very differently and they use strikingly different language. Now again, this court, to resolve this case on plain error review and the categorical approach context, where the defendant has not identified a single Tennessee case that uses the aggravated assault statute in the manner he claims, this court does not need to get to all of these more in-depth plain text arguments to resolve the case. But if it should reach them, then the government would contend Ohio and Tennessee are not equivalent. And certainly, on plain error review, it is not clear or obvious that the Tennessee statute must be interpreted by this court in the same way that the Sixth Circuit would interpret a very different Ohio statute. I'm just switching to another question. Assuming that the, I don't know how we'll come out of this, but assuming that we were to decide that the first three prongs are met, I don't see anything in your brief that contests the fourth prong. Does the government concede that the fourth prong is satisfied in this case if the first three prongs are met? If we do, yes, we do concede that if this court were to find plain error, that it would be appropriate for the case to be reconsidered on remand to adjust the sentence. That, of course, is fine. You're welcome to concede that if you wish. I don't understand that. In other words, I don't understand what it is about this situation that would impugn the integrity generally of judicial proceedings that would cast a pall on the integrity of our judiciary or the criminal law process here. What is there that satisfies that test? So certainly, I don't think the court has to remand. I think it could find that the fourth factor is not made. We are cognizant of cases in this court that have noted that when the guidelines range became too high and the sentence the defendant actually received was under that higher guidelines range, that it is appropriate. The courts can exercise its discretion in that case. But do we still have discretion, or under our case law, is it automatic for this panel? I don't believe it is automatic, no. It remains discretionary, but this court, I think in cases where the outcome of finding plain error would be to reduce what the sentencing range is, it has made the choice to exercise its discretion in remand. That wouldn't make the third prong and the fourth prong the same? I don't know that it would. I mean, they are very closely interrelated. Meaning, it affects his substantial rights by messing up his guideline range, and then we choose to exercise our discretion. I think that's perhaps part of why the fourth one is discretionary, to determine if that substantial effect was such. It doesn't seem to have much meaning to it, does it? Well, I think that this court has certainly recognized it could remand it. I don't think this court has said you have to. I mean, this panel could choose not to exercise its discretion, even if it finds plain error. But the government does not, in this case, strongly oppose that. An exercise of discretion is permissible. So, in short, the government would reaffirm this case, the realistic probability standard, the requirement for state law. It is clear, it is largely uncontested, and it alone resolves the case. Should this court look beyond that, under plain error review, there must be clear, obvious error. And even the courts that have looked at this mental faculty, pure mental injury argument that is raised by the defendants, the Sixth Circuit in Sanchez-Perez and the Ninth Circuit in Castro, they have clearly found that it would not suffice to take Tennessee aggravated assault outside of the realm of a crime of violence. And for these reasons, we would ask the court to affirm. Thank you, Ms. Kenyard. Mr. O'Neill for rebuttal. So, in applying the realistic probability test, the point is to ensure that this is not me nitpicking or a sort of figment of my imagination that doesn't have any real consequences. That's the point of the test, and it makes sense, right? When we look at Castillo-Rivera and the definition of firearm, it makes sense to not incorporate from an entirely different statute a definition that doesn't clearly resolve the case and apply it to a different statute that doesn't incorporate that definition. I think the court decided that correctly. Here, we have Tennessee courts interpreting the statute that Mr. Russell relies on. And what the Tennessee courts explicitly tell us is that one of the ways— I concede it's one of the ways— that we can satisfy that statute is by showing evidence that the victim underwent severe psychiatric counseling and had trouble psychiatrically performing the normal tasks of the day. Now, the government would have us look to the statute, and I think that's very important, right? And I think it's important to give effect to each word used in the statute. And so we look at 37E, and we look at protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty. Now, what I understand the government to argue is that somehow when they say mental faculty, they mean, you know, the functioning of the brain or, you know, a sort of brain illness. It doesn't include PTSD. But I don't understand sort of how the government would read those as three separate things, the function of a bodily member, organ, or mental faculty, without concluding that mental faculty means something different than or in addition to bodily member or organ. It's meant to cause the statute to sweep more broadly. It's not an explosion, but it adds something to there. And when people are instructed on aggravated assault in Tennessee and told you have to find whether the defendant caused a bodily injury resulting in a serious bodily injury, they are read this definition that serious bodily injury means protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty. Is it a problem for your case, counsel for the government pointed to footnote 8 of Sanchez-Perez, which seems to carve out aggravated assault under Tennessee law from the misdemeanor assault that was being addressed in that case. Is that a problem for you? I don't think so, Your Honor, because the footnote says it doesn't say we decline to or we treat them differently. The last sentence of the footnote says we need not opine in this case whether our case law analyzing Tennessee aggravated assault statute is consistent with our binding en banc decision in Burris. Well, we write those sorts of things. Circuit judges write those sorts of things to recognize there's some problems in our case law. We just don't need to cross that bridge right now. So I don't see what the problem the court could be concerned with other than not addressing an argument that hasn't been presented to it. To my mind, both statutes, the domestic violence assault statute issued in Sanchez-Perez and the aggravated assault statute at issue here explicitly incorporate and rely on the assault definition. So they're both explicitly incorporating the assault statute. You commit domestic violence assault in Tennessee by committing an assault in a particular manner. You commit aggravated assault in Tennessee by committing assault in a particular manner. And then the assault statute also explicitly incorporates, well, not explicitly, the assault statute including the definitions in the title. Anyways, Tennessee statute thoroughly defines what bodily injury and serious bodily injury mean. And I think that that is an important, you know, point to make is that the government says, well, this is relied on, this is covered by Mungia Portillo. But the problem is, is that this statute is normally divisible. That's the problem with the cases that the government cites to saying other circuits have found that aggravated assault is a crime of violence. This statute is normally divisible by the three different methods of aggravation, whether it caused bodily injury, or whether it resulted in serious bodily injury, you know, resulted in death, involved the use of a deadly weapon. It's normally divisible by those. So in the cases that the government cites to, when other courts have looked at this, they have all involved deadly weapons. And so the courts have looked at the least, you know, culpable way of committing Tennessee aggravated assault with a deadly weapon. And that's why they haven't even addressed or discussed this argument about bodily injury or serious bodily injury. That's why this didn't come up in Mungia Portillo at all, because there, there was the use of a deadly weapon, and so it was easy to analyze that statute and reach that conclusion. So, actually, my time has expired. Thank you for your time. Thank you, Mr. O'Neill. Your case is under submission, and as Judge Duncan mentioned, we noticed that you're a court opponent, and we appreciate your willingness to take these appointments and for your good job on behalf of your client. Thank you.